United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

IHEANYI AWAMBU,

Plaintiff,

v.

CALIFORNIA DEPARTMENT OF CORRECTIONS AND REHABILITATION (CDCR), et al.,

Defendants.

Case No. 26-cv-01414-WHO

**ORDER ON MOTION TO DISMISS**

Re: Dkt. Nos. 32, 33

Plaintiff Iheanyi Awambu ("Awambu") alleges that the California Department of Corrections and Rehabilitation ("CDCR") and the California Correctional Health Care Services ("CCHCS") (collectively, "defendants") unlawfully terminated him after he was unable to climb four flights of stairs to perform his duties as a correctional nurse, despite disclosing a physical disability. Awambu brings a variety of federal claims against defendants under the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101 *et seq.*, and state claims under California's Fair Employment Housing Act (FEHA), CAL. GOV'T CODE §§ 12900 *et seq.*, and for the intentional and negligent infliction of emotional distress. Defendants move for judgment on the pleadings. Awambu's ADA claims are all alleged under Titles II, III, and V of the ADA, which are inapplicable; these claims cannot be saved by amendment. Lacking any federal claims, there is no subject matter jurisdiction for the case to remain in federal court. Although the state claims may be plausible, they will need to be adjudicated in state court. For the reasons set forth below, defendants' motion is GRANTED for the ADA claims and the state claims DISMISSED for lack of jurisdiction.

**BACKGROUND**

Awambu is a 72-year-old man with various physical disabilities, including "injury to his

United States District Court
Northern District of California

lower back [and] bi-lateral knee pain." Amended Complaint ("Compl.") [Dkt. No. 19] ¶¶ 16–17. Due to his condition, Awambu walks with the assistance of a cane. *Id.* ¶ 18.

Awambu was hired in August 2022 to serve as a Registered Nurse at San Quentin Prison. *Id.* ¶ 26. As a condition of employment, Awambu underwent a medical clearance process "to determine his fitness for work" as a nurse. *Id.* ¶ 28. The doctor who performed his evaluation "recommended work restriction[s] to accommodate his disability." *Id.* ¶ 30.

On June 12, 2023, Awambu was assigned to work at the Central Health Services building, the "primary medical facility at San Quentin," in the Sensitive Needs Yard ("SNY") Clinic. *Id.* ¶¶ 33–34. The SNY Clinic contains its own Housing Unit (the "SNY Housing Unit"), composed of a "four-story building with no elevator access[,] . . . ramps, lifts, inclines or other accommodations to allow persons with physical limitations to reach the top floor." *Id.* ¶ 34. While working, Awambu's supervisor "directed him to walk to the SNY Housing Unit to obtain a signature from an inmate who had refused to come down for his medical appointment." *Id.* ¶ 35. The correctional officer escorting Awambu noted that "he would have to climb all four flights of stairs in the building to reach the inmate's cell." *Id.* ¶ 36.

When he arrived to the SNY Housing Unit, Awambu disclosed to the correctional officer that "he could not climb the four flights of stairs due to his disability." *Id.* ¶ 37. The officer escorted Awambu back to his supervisor. *Id.* Awambu relayed his concerns with the supervisor, who "became immediately irate" and screamed, "Why did they hire you, why did they hire you?" *Id.* ¶ 38. Awambu asked the supervisor if "disabled persons could not be employed with CCHCS." *Id.* ¶ 39. She did not respond. *Id.*

Three days later, during a "regularly scheduled operations meeting of the defendants' on-site supervisors and managers," Awambu's supervisor brought up his inability to climb the stairs and "recommended terminating [him]." *Id.* ¶ 40. Awambu was terminated that same day. *Id.* ¶ 41. He was never provided a reason for his termination. *Id.* ¶ 42.

Awambu filed suit on February 18, 2026, alleging that he was "terminated in retaliation for requesting reasonable accommodation[s] and due to his actual/perceived disability." *Id.* ¶ 45. While his initial complaint focused on employment discrimination and wrongful discharge under

Title I of the ADA, Awambu filed an amended complaint after defendants asserted his Title I claims were barred under the Eleventh Amendment. *See* Dkt. No. 17; Compl. The Amended Complaint asserts seven causes of action against defendants: (1) disability discrimination under Title III of the ADA; (2) failure to provide reasonable accommodations under Title II of the ADA; (3) retaliation under Title V of the ADA (42 U.S.C. § 12203); (4) employment discrimination under FEHA; (5) failure to engage in the interactive process under FEHA, Cal. Gov. Code § 12940(n); (6) intentional and negligent infliction of emotional distress; and (7) declaratory and injunctive relief under Titles II and III of the ADA. *Id.* ¶¶ 56–96.

Defendants moved for judgment on the pleadings on September 30, 2026. *See* Defendant's Motion for Judgment on the Pleadings ("Mot.") [Dkt. No. 32]. That motion is now fully briefed. *See* Opposition to Motion for Judgment on the Pleadings ("Oppo.") [Dkt. No. 34]; Reply in Support of Motion for Judgment on the Pleadings ("Repl.") [Dkt. No. 35]. Because oral argument was unnecessary in light of the arguments of counsel, oral argument was vacated.

**LEGAL STANDARD**

Federal Rule of Civil Procedure 12(c) provides that "[a]fter the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed. R. Civ. Proc. 12(c). "Dismissal under Rule 12(c) is warranted when, taking the allegations in the complaint as true, the moving party is entitled to judgment as a matter of law." *Daewoo Elecs. Am. Inc. v. Opta Corp.*, 875 F.3d 1241, 1246 (9th Cir. 2017) (citation omitted). "[M]options for judgment on the pleadings are functionally identical to Rule 12(b)(6) motions." *Webb v. Trader Joe's Co.*, 999 F.3d 1196, 1201 (9th Cir. 2021) (internal quotation marks omitted) (citing *United States ex rel. Cafasso v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1054 n.4 (9th Cir. 2011)). "[U]nder both rules, 'a court must determine whether the facts alleged in the complaint, taken as true, entitle the plaintiff to a legal remedy.'" *Chavez v. United States*, 683 F.3d 1102, 1108 (9th Cir. 2012) (citation omitted). For both motions, dismissal may be based on either the lack of a cognizable legal theory or absence of sufficient facts alleged under a cognizable legal theory. *Robertson v. Dean Witter Reynolds, Inc.*, 749 F.2d 530, 534 (9th Cir. 1984) (citation omitted). As with Rule 12(b)(6) motions, inferences must be drawn in favor of the nonmoving party. *Usher v.*

United States District Court
Northern District of California

*City of L.A.*, 828 F.2d 556, 561 (9th Cir. 1987).

A plaintiff's complaint must allege facts to state a claim for relief that is plausible on its face. *See Ashcroft v. Iqbal*, 556 U.S. 662, 677 (2009). A claim has "facial plausibility" when the party seeking relief "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Although the court must accept as true the well-pled facts in a complaint, conclusory allegations of law and unwarranted inferences will not defeat an otherwise proper Rule 12(b)(6) motion. *See Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001). "[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level." *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations and footnote omitted).

**DISCUSSION**

Defendants raise three arguments in their motion for judgment on the pleadings. They first assert that Awambu's ADA claims are barred because Titles II and III do not apply to employment discrimination. Mot. at 6–8. They then argue that Awambu's FEHA claims are time-barred because he waited too long to file suit after receiving his right to sue notice. *Id.* at 9–10. They finally claim that his tort claims must be dismissed for failure to exhaust and governmental immunity. *Id.* at 10–11. I address the federal claims and conclude that they lack merit, meaning leaving me without jurisdiction on the potentially plausible state claims.

**I. ADA Claims**

The ADA contains five titles: Employment (Title I); Public Services (Title II); Public Accommodations and Services Operated by Private Entities (Title III); Telecommunications (Title IV); and Miscellaneous Provisions (Title V). *See* Americans with Disabilities Act of 1990, Pub. L. No. 101–336, 104 Stat. 327, 327–28 (1990). "[E]ach title of the ADA encompasses different types of discrimination, as well as different remedies." *Sharkey v. O'Neal*, 778 F.3d 767, 770 (9th Cir. 2015) (internal quotations and citation omitted).

In his Amended Complaint, Awambu alleges that defendants violated Titles II, III, and V

of the ADA. *See* Compl. ¶¶ 56–62 (Count I – disability discrimination under Title III); *id.* ¶¶ 63–68 (Count II – failure to provide a reasonable accommodation under Title II); *id.* ¶¶ 69–76 (Count III – retaliation under Title V). Defendants argue that because this dispute really concerns employment-related issues, covered by Title I, Awambu cannot assert his claims under the other provisions of the ADA. Mot. at 6–8.

Defendants are correct. With respect to Title II, the Ninth Circuit has squarely held that the text of the ADA "does not suggest that Congress intended for Title II to apply to employment." *Zimmerman v. Ore. Dep't of Just.*, 170 F.3d 1169, 1174 (9th Cir. 1999). Instead, Title II "prohibits discrimination only in a public entity's 'outputs.'" *Id.* at 1176. Because Awambu's Title II claim expressly alleges that defendants "deprive[d] [him] of equal employment opportunities and otherwise adversely affect[ed] his status as an employee because of disability," his claims sound in employment concerns, not public entity "outputs." *See* Compl. ¶ 68. His second cause of action under Title II is barred.

So too with Count I of the complaint, alleging disability discrimination under Title III. While *Zimmerman* only extends to Title II, Title III applies only to public accommodations provided by *private* entities. *See* 42 U.S.C. § 12181 *et seq.* Because CDCR and CCHCS are both state agencies, Title III is inapplicable to Awambu's employment discrimination claims. Count I is accordingly barred.

Leave to amend Counts I and II would be futile. Awambu would be forced to refile his ADA claims as Title I claims, and the Supreme Court has squarely held that public entities like CDCR and CCHCS are immune from such suits under the Eleventh Amendment. *See Bd. of Trustees of Univ. of Ala. v. Garrett*, 531 U.S. 356, 360 (2001) (holding that Congress did not abrogate state sovereign immunity from suit by private individuals for money damages under Title I). Because *Garrett* squarely precludes Awambu from repackaging his Title II and III claims as a Title I dispute, I GRANT judgment on the pleadings without leave to amend.

Finally, Awambu's retaliation claim under Title V, which defendants seemingly do not address, is also barred. Title V of the ADA "does not protect disabled persons in a particular setting; instead, it includes an anti-retaliation provision, 42 U.S.C. § 12203(a)–(b), that protects

individuals who exercise their rights under Titles I, II, or III from retaliation." *G. v. Fay Sch.*, 931 F.3d 1, 9 (1st Cir. 2019). "A Title V claim of retaliation thus must allege conduct protected under one of those earlier titles, and a retaliatory response to that protected conduct." *Id.* Here, the crux of Awambu's retaliation claim asserts that defendants terminated him "for opposing their discriminatory and unlawful conduct under the ADA." Compl. ¶ 73. That is clearly an employment-related concern that can only be raised under Title I. Because *Garrett*'s sovereign immunity principles "necessarily [extend] to claims brought under Title V of the ADA, at least where . . . the claims are predicated on alleged violations of Title I," defendants are similarly immune from Title V liability under the Eleventh Amendment. *Demshki v. Monteith*, 255 F.3d 986, 988 (9th Cir. 2001).

As a result, none of Awambu's ADA claims has merit. Judgment on the pleadings is GRANTED for all of them.

## II. Subject Matter Jurisdiction and Remaining Claims

Awambu's remaining claims are state law claims. He raises two claims under California's Fair Employment Housing Act ("FEHA") for employment discrimination and failure to engage in the interactive process under FEHA, and claims for the intentional and negligent infliction of emotional distress. His FEHA claims appear plausible because they relate back to the crux of the allegations in his original complaint. His tort claims do not appear plausibly alleged in light of the governmental immunity issues raised in defendants' briefing.

While leave to amend may cure those defects, in the exercise of my discretion I will not take supplemental jurisdiction over them. 8 U.S.C. § 1367 governs the exercise of supplemental jurisdiction over state law claims in a suit involving federal claims. In general, when district courts have original jurisdiction over civil actions, "the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy." 28 U.S.C. ' 1367(a). Subsection (c) lists four situations in which a district court may decline to exercise supplemental jurisdiction over state law claims:

1. The claim raises a novel or complex issue of state law,

> 2. The claim substantially predominates over the claim or claims over which the district court has original jurisdiction,
> 3. The district court has dismissed all claims over which it has original jurisdiction, or
> 4. In exceptional circumstances, there are other compelling reasons for declining jurisdiction.

28 U.S.C. § 1367(c).

"A district court's decision whether to exercise [supplemental] jurisdiction after dismissing every claim over which it had original jurisdiction is purely discretionary." *Carlsbad Tech., Inc. v. HIF Bio, Inc.*, 556 U.S. 635, 639 (2009). "When federal claims are eliminated at an early stage of litigation, the district court has 'a powerful reason to choose not to continue to exercise jurisdiction.'" *Dubinina v. Heinsohn*, No. 25-cv-10542-JST, 2026 WL 1759401, at *3 (N.D. Cal. June 18, 2026) (quoting *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 351 (1988)).

In this Order, I have dismissed all claims over which I would have original jurisdiction. Awambu has not raised any argument suggesting why the state claims, standing alone, should stay in federal court. To the contrary, the record shows that Awambu's FEHA and tort claims appear best suited for resolution in state court. Accordingly, I GRANT defendants' motion for judgment on the pleadings with respect to the ADA claims and dismiss the case without prejudice to Awambu bringing his state claims in state court.

**CONCLUSION**

For the reasons set forth above, defendants' motion for judgment on the pleadings is GRANTED on Awambu's ADA claims, the only federal claims in this case. I will not take supplemental jurisdiction over the state claims and DISMISS this case for lack of subject matter jurisdiction. The state law claims may be realleged in state court.

**IT IS SO ORDERED.**

Dated: November 12, 2026



William H. Orrick
United States District Judge



United States District Court
Northern District of California